UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

ANGELA G.,[1]

      Plaintiff,

v.

COMMISSIONER, SOCIAL SECURITY ADMINISTRATION,

      Defendant.

Case No. 6:22-cv-00674-YY

OPINION AND ORDER

YOU, Magistrate Judge.

      Plaintiff Angela G. seeks judicial review of the final decision by the Commissioner of Social Security ("Commissioner") denying plaintiff's application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act"), 42 U.S.C. § 401-33. This court has jurisdiction to review the Commissioner's final decision pursuant to 42 U.S.C. § 405(g). For the reasons set forth below, the Commissioner's decision is AFFIRMED.

      Plaintiff protectively filed for DIB on December 23, 2019, alleging disability beginning on September 6, 2014. Tr. 76, 78. Plaintiff's application was initially denied on May 13, 2020, and upon reconsideration on August 6, 2020. Tr. 89. Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which took place on June 4, 2021. Tr. 31. At that hearing,

---

[1] In the interest of privacy, the court uses only plaintiff's first name and the first initial of plaintiff's last name.

1 – OPINION AND ORDER

plaintiff, who was represented by counsel, and a vocational expert testified. The ALJ issued a decision on June 25, 2021, finding plaintiff not disabled within the meaning of the Act. Tr. 10-30.

The Appeals Council denied plaintiff's request for review on March 9, 2022. Tr. 1-3. Therefore, the ALJ's decision is the Commissioner's final decision and subject to review by this court. 20 C.F.R. § 416.1481.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007). This court must weigh the evidence that supports and detracts from the ALJ's conclusion and "'may not affirm simply by isolating a specific quantum of supporting evidence.'" *Garrison v. Colvin*, 759 F.3d 995, 1009–10 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007)). This court may not substitute its judgment for that of the Commissioner when the evidence can reasonably support either affirming or reversing the decision. *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007). Instead, where the evidence is susceptible to more than one rational interpretation, the Commissioner's decision must be upheld if it is "supported by inferences reasonably drawn from the record." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citation omitted); *see also Lingenfelter*, 504 F.3d at 1035.

## SEQUENTIAL ANALYSIS AND ALJ FINDINGS

Disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12

months." 42 U.S.C. § 423(d)(1)(A). The ALJ engages in a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. § 416.920; *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006) (discussing *Tackett v. Apfel*, 180 F.3d 1094, 1098–99 (9th Cir. 1999)).

At step one, the ALJ found plaintiff had not engaged in substantial gainful activity since her alleged onset date of September 6, 2014, through her date last insured, December 31, 2019. Tr. 15. At step two, the ALJ determined plaintiff suffered from the following severe impairments: bilateral hip degenerative joint disease status post-surgery on the right hip; chronic heart failure; obesity; shoulder degenerative joint disease; osteoarthritis; and labral fraying. *Id.*

At step three, the ALJ found plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. Tr. 16. The ALJ next assessed plaintiff's residual functional capacity ("RFC") and determined plaintiff has the RFC to

> perform light work as defined in 20 CFR 404.1567(b) except the claimant can lift and carry 20 lbs. occasionally and 10 lbs. frequently. The claimant can stand and walk 2 hours in an 8 hour day, and sit for 6 hours or more in an 8 hour day. The claimant can occasionally climb ramps and stairs, but never climb ladders, ropes, or scaffolds. The claimant can occasionally balance, stoop, kneel, crouch, and crawl. The claimant can tolerate occasional exposure to atmospheric conditions as defined in Selected Characteristics of Occupations.

Tr. 17.

At step four, the ALJ found plaintiff was able to perform her past relevant work as an office assistant. Tr. 25. Thus, the ALJ concluded plaintiff was not disabled.

## DISCUSSION

Plaintiff contends the ALJ erred by improperly discounting her subjective symptom testimony and finding the medical opinion of physician's assistant Patrick Dahl was not persuasive.

3 – OPINION AND ORDER

I.      **Subjective Symptom Testimony**

    A.      **Hearing Testimony**

Plaintiff worked for Lane County in the assessor's office for thirty years. Tr. 40. She had planned to work until age 58 but, due to her alleged disability, retired at age 55 in February 2017. Tr. 50, 69. Plaintiff testified that she stopped working because "she was having trouble sitting for long periods of time, and . . . had problems with my heart." Tr. 42. Specifically, plaintiff described, "When I'd wake up in the morning, a lot of times, I would have a racing heart, and I can't drive when it's like that, because I'm afraid to drive because you feel kind of odd. . . . And so I would call in and be late a lot because of it, at least twice a week, and it was starting to negatively affect upon management." Tr. 42. Plaintiff also testified that she had trouble sitting for long periods of time due to back and leg pain. Tr. 44.

When the ALJ asked plaintiff why she waited five years to file for disability when she believed she was disabled beginning in 2014, plaintiff explained that she did not realize that her heart still had issues: "I thought that it had healed itself, because after I quit working, it wasn't as predominant, and I could rest . . . so you don't pay as much attention to it as much. And so when I realized that part of the way I was feeling was actually the heart condition, then I thought, well, you know, I am disabled." Tr. 52. Plaintiff's heart condition is discussed in medical records leading up to her hip replacement surgery in September 2019. Tr. 380, 609. Plaintiff was cleared for surgery, but afterwards she was referred to cardiology. Tr. 609. Plaintiff had previously been diagnosed with a left bundle branch blockage around 2004-2009. Tr. 371. The echocardiogram in 2019 showed a "mildly reduced LV systolic function with [ejection fraction of] 45%," although no further medical care was recommended. Tr. 380.

### B.     Standard

When a claimant has medically documented impairments and there is no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of . . . symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996) (citation omitted). A general assertion that the claimant is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citation omitted). The ALJ need not "perform a line-by-line exegesis of the claimant's testimony" or "draft dissertations when denying benefits." *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020). But Ninth Circuit law "plainly requires" that an ALJ do more than "offer[ ] non-specific conclusions that [the claimant's] testimony [is] inconsistent with [certain evidence]." *Id.* (citations omitted). If the "ALJ's credibility finding is supported by substantial evidence in the record, [the court] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (citation omitted).

Effective March 28, 2016, the Commissioner superseded Social Security Ruling ("SSR") 96-7p, governing the assessment of a claimant's "credibility," and replaced it with SSR 16-3p. *See* SSR 16-3p, *available at* 2016 WL 1119029. SSR 16-3p eliminates the reference to "credibility," clarifies that "subjective symptom evaluation is not an examination of an individual's character," and requires the ALJ to consider all the evidence in an individual's record when evaluating the intensity and persistence of symptoms. *Id.* at 1–2. The ALJ must examine "the entire case record, including the objective medical evidence; an individual's

statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* at 4.

### C. ALJ's Decision

The ALJ found that plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms." Tr. 18. However, the ALJ found that plaintiff's "statements concerning the intensity, persistence and limited effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." *Id.* Specifically, the ALJ rejected plaintiff's symptom testimony based on her failure to seek medical care for her heart and leg and back pain, and based on her daily living activities. Tr. 18. The ALJ also concluded that plaintiff's medical need of a walking-assistive device was limited to just before and after her hip replacement surgeries, and therefore the ALJ did not include the requirement in plaintiff's RFC. *Id.*

#### 1. Failure to Seek Treatment

The ALJ rejected plaintiff's testimony regarding her heart and hip pain because, although her alleged onset date was September 6, 2014, she had not received medical care since December 2013, and did not seek medical care until February 12, 2015. Tr. 18. And when plaintiff did seek medical care for her heart in March 2016, she "was not interested in further work up of her [heart] palpitations." *Id.* The ALJ also found the improvement with physical therapy that led to gaps in plaintiff's treatment for her hip pain made her testimony less persuasive. Tr. 20.

"[I]n assessing a claimant's credibility, the ALJ may properly rely on unexplained or inadequately explained failure to seek treatment." *Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012) (quoting *Tommasetti*, 533 F.3d at 1039 (quotation omitted)). "[I]f a claimant

6 – OPINION AND ORDER

complains about disabling pain but fails to seek treatment, or fails to follow prescribed treatment, for the pain, and ALJ may use such failure as a basis for finding the complaint unjustified or exaggerated." *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007).

Plaintiff argues that her failure to seek treatment does not negate her credibility because it was not one condition standing alone that caused her disability, but the combination of impairments. However, a careful review of the medical record does not reflect a combination of impairments. From April 2015 through March 2016, plaintiff sought medical care for foot pain. Tr. 307, 305, 306, 302, 300, 282, 283, 280, 270. Then in March 2016, she reported to her medical provider that her heart "palpitations are much better" and that she "did not really want to work it up again." Tr. 270, 273. Then from April 2016 through September 2019, plaintiff's care focused on her right hip pain, leading up to her hip replacement surgery on September 12, 2019. *See, e.g.,* 359, 335, 340, 661, 456, 386. Then almost a year later (but after her date last insured) plaintiff had hip replacement surgery on her left hip. Tr. 928.

The ALJ's rejection of plaintiff's testimony for her failure to seek treatment is a clear and convincing reason to discount her testimony and supported by substantial evidence in the record. The ALJ did not err in rejecting her testimony on this basis.

    **2.**    **Daily Living Activities**

The ALJ also found plaintiff's activities of daily living made her testimony regarding her limitations less persuasive. Tr. 18. The ALJ noted that in her January 2020 Function Report, plaintiff "reported she is able to unload the dishwasher, do laundry, spend 15 to 60 minutes to prepare her own meals, do household chores (vacuum, sweep, clean kitchen counters, mop, dust, do 1 or 2 hours of yardwork) (with frequent breaks and difficulty going from standing to kneeling without assistance), and mow), spend 30-40 minutes shopping in the store twice a

month, and babysit her granddaughter 2 days a week." Tr. 21. The ALJ noted that plaintiff reported to her medical providers "some right hip pain after she 'may have overdone it' pruning her roses and staying '[v]ery busy' at home with gardening tasks." *Id.*

An ALJ may invoke activities of daily living in the context of assessing symptom testimony to (1) illustrate a contradiction in previous testimony, or (2) demonstrate that the activities meet the threshold for transferable work skills. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). Here, the ALJ's observations of plaintiff's activities as documented throughout the medical record contradict plaintiff's testimony regarding her physical limitations due to her alleged impairments. Thus, plaintiff's activities of daily living were a clear and convincing reason, supported by substantial evidence in the record, to discredit plaintiff's symptom testimony.

### 3.   Assistive-Walking Device

Finally, plaintiff assigns error to the ALJ's conclusion that her cane was not medically necessary. The ALJ found that while plaintiff was initially prescribed a cane on February 21, 2017, "the longitudinal medical evidence of record does not support a provision for use of an ambulatory assistive device as medically necessary." Tr. 19. The Agency provides that "there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed" for a hand-held assistive device to be medically required. SSR 96-9P, *available at* 1996 WL 374185.

The record supports the ALJ's conclusion. Plaintiff was prescribed a cane on February 21, 2017, "while beginning work with physical therapy," Tr. 356, and continued to use that cane for at least two months, Tr. 360. At her next appointment two months later, plaintiff reported she was doing better and "tolerates walking up and down stairs a little bit better" and that she had

"no pain currently but does report pain in the evening." Tr. 361. There is no mention of plaintiff's use of a cane or walking device until just before and after her right hip surgery. Tr. 456, 478, 480. Therefore, the ALJ's conclusion is supported by substantial evidence, and the ALJ did not err.

## II.     Medical Opinion Evidence

Plaintiff also argues the ALJ erred by rejecting the opinion of physician assistant Patrick Dahl.

### A.     Standard

When evaluating medical opinion evidence for claims filed on or after March 27, 2017, ALJs must apply 20 C.F.R. § 404.1520c for Title II claims. *Revisions to Rules Regarding the Evaluation of Medical Evidence* (*Revisions to Rules*), 82 Fed. Reg. 5844, *available at* 2017 WL 168819 (Jan. 18, 2017). Under this regulation, ALJs no longer "weigh" medical opinions, but rather determine which are most "persuasive." 20 C.F.R. §§ 404.1520c(a)-(b), 416.920c(a)-(b). To that end, controlling weight is no longer given to any medical opinion. *Revisions to Rules*, 82 Fed. Reg. at 5867-68; *see also* 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, the Commissioner evaluates the persuasiveness of medical opinions based on (1) supportability, (2) consistency, (3) relationship with the claimant, (4) specialization, and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements."  20 C.F.R. §§ 404.1520c(a), (c)(1)-(5), 416.920c(a), (c)(1)-(5).

The factors of "supportability" and "consistency" are considered to be "the most important factors" in the evaluation process. 20 C.F.R. §§ 404.1520c(c), 416.920c(c). Supportability means the extent to which a medical source supports the medical opinion by

9 – OPINION AND ORDER

explaining the "relevant . . . objective medical evidence." *Woods v. Kijakazi*, 32 F.4th 785, 791–92 (9th Cir. 2022) (citing 20 C.F.R. § 404.1520c(c)(1)). Consistency means the extent to which a medical opinion is "consistent . . . with the evidence from other medical sources and nonmedical sources in the claim." *Id.* (citing 20 C.F.R. § 404.1520c(c)(2)).

An ALJ must articulate how persuasive the ALJ finds the medical opinions and explain how the ALJ considered the supportability and consistency factors. 20 C.F.R. §§ 404.1520c(a), (b), 416.920c(a), (b); *see Tyrone W. v. Saul*, No. 3:19-cv-01719-IM, 2020 WL 6363839, at *7 (D. Or. Oct. 28, 2020). "The ALJ may but is not required to explain how other factors were considered, as appropriate, including relationship with the claimant (length, purpose, and extent of treatment relationship; frequency of examination); whether there is an examining relationship; specialization; and other factors, such as familiarity with other evidence in the claim file or understanding of the Social Security disability program's policies and evidentiary requirements." *Linda F. v. Saul*, No. C20-5076-MAT, 2020 WL 6544628, at *2 (W.D. Wash. Nov. 6, 2020). However, ALJs are required to explain "how they considered other secondary medical factors [if] they find that two or more medical opinions about the same issue are equally supported and consistent with the record but not identical." *Tyrone W.*, 2020 WL 6363839, at *6 (citing 20 C.F.R. §§ 404.1520c(b)(2) and 404.1520c(b)(3)).

Furthermore, the court must continue to consider whether the ALJ's decision is supported by substantial evidence. *See Revisions to Rules*, 82 Fed. Reg. at 5852 ("Courts reviewing claims under our current rules have focused more on whether we sufficiently articulated the weight we gave treating source opinions, rather than on whether substantial evidence supports our final decision."); *see also* 42 U.S.C. § 405(g).

10 – OPINION AND ORDER

B.     Analysis

Dahl completed a treating source statement for plaintiff on April 9, 2021. Tr. 1026-31. He opined that plaintiff could walk five to six city blocks and could sit and stand/walk for three hours each in an eight-hour day. Tr. 1029. Dahl also opined that plaintiff could occasionally lift 10 pounds and could never lift twenty or fifty pounds, Tr. 1030, and that, due to her symptoms, she would miss more than four days per month from work. Tr. 1031.

The ALJ found Dahl's opinion "not persuasive." Tr. 24. First, the ALJ noted that "[g]iven the level of care the claimant has received from specialists, Mr. Dahl's opinion as a general practice physician's assistant is not as persuasive as a supporting opinion from the claimant's orthopedic surgeon or cardiologist would have been." *Id*. The ALJ then went on to explain that because Dahl's limitations for plaintiff merely repeated what his medical notes said the "[p]atient reports," Dahl's opinion was too reliant on plaintiff's subjective complaints. *Id.* Moreover, the ALJ found that Dahl's opinion was inconsistent with the medical record, given her gaps in plaintiff's medical treatment and her activities of daily living. *Id.*

Plaintiff argues the ALJ impermissibly rejected Dahl's opinion because he was a physician assistant, but that is not what the ALJ wrote. Instead, the ALJ observed that it would have been more persuasive to hear from one of plaintiff's surgeons or cardiac specialists. Such an observation was not error.

The ALJ explained why he did not find Dahl's opinion consistent with or supported by the medical record, i.e., because of plaintiff's failure to seek treatment and her daily living activities. For the reasons explained above, such reasons are supported by substantial evidence, and do not constitute error.

**ORDER**

Based on the forgoing, the Commissioner's decision denying plaintiff's application for disability insurance benefits is AFFIRMED.

DATED June 23, 2023.

/s/ Youlee Yim You
Youlee Yim You
United States Magistrate Judge

12 – OPINION AND ORDER